UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| vs. | CRIMINAL ACTION NO.:  3:25-CR-132-RGJ<br>*Electronically Filed* |
| LARYEN TORRES-CARMONA | DEFENDANT |

**RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Comes the Plaintiff, the United States of America, by counsel, Joseph Ansari and for its Response to Defendant Torres-Carmona's (hereinafter "Torres-Carmona") Motion to Dismiss states as follows:

Torres-Carmona moves to dismiss the Indictment by relying on the "outrageous government conduct" doctrine, arguing that the United States' method of inducing Torres-Carmona's arrest and subsequent confrontation renders this prosecution fundamentally unfair and violates due process.   As set out below, the Sixth Circuit has not applied the outrageous government conduct doctrine in a case to date.

**STATEMENT OF FACTS**

On July 25, 2023, Torres-Carmona, a Cuban citizen, applied for admission to the United States at the Nogales, AZ DeConcini Port of Entry, by booking an appointment via CBP One. (DN 23-2).   Torres-Carmona did not possess valid entry documents and was paroled into the United States for a period of two years.   (Id.).   Torres-Carmona was subject to deportation at any time.   (DN 23-3).   Torres-Carmona was ordered to appear in front of an Immigration

1

Judge at 601 West Broadway, Louisville, Kentucky on January 22, 2024. (Id.). Later, Torres-Carmona was given a new court date of June 3, 2027. However, on August 29, 2024, Torres-Carmona was arrested for theft and on July 7, 2025, he was arrested for strangling his girlfriend. (Exhibits A1 & A2-Arrests).

On July 30, 2025, U.S. Citizenship and Immigration Services (USCIS), Department of Homeland Security (DHS) emailed Enforcement and Removal Operations (ERO) Louisville identifying Torres-Carmona, among others, as being eligible to be taken into custody based on his criminal arrests. (DN 23-5). A notice was sent to Torres-Carmona requesting he come to the USCIS building, located at 411 S. 4th Street, Louisville, Kentucky for his immigration interview. The USCIS building is a secure building providing safety for both Torres-Carmona and the Deportation Officers (DO). A secure facility was optimal to arrest Torres-Carmona based on his violent history of strangling his girlfriend. On August 26, 2025, Torres-Carmona appeared and interviewed with an immigration officer. On the same day, his I-485 Application was administratively closed. (DN 23-7).

Following the interview, a Supervisory Immigration Services Officer (SISO) with USCIS escorted Torres-Carmona to a secure hallway where three DOs awaited him. DO A.B., fluent in Spanish, explained who the DOs were, and that Torres-Carmona was being arrested. [Exhibit B-A.B. Statement]. Torres-Carmona became combative, shoving two of the DOs and resisting arrest. [Exhibit C-SISO Statement]. Torres-Carmona continued to resist arrest until two DOs were able to finally handcuff him and lead him out of the building. [Id.].

## **LEGAL STANDARD**

Rule 12 of the Federal Rules of Criminal Procedure control motions to dismiss indictments. Rule 12(b)(1) of the Federal Rules of Criminal Procedure allows dismissal of indictments only for those objections that are "capable of determination without the trial of the general issue…" *United States v. Knox,* 396 U.S. 77 (1969). District courts can rule on motions to dismiss indictments as long as the court's conclusions do not invade the province of the jury. *United States v. Craft*, 105 F3d. 1123, 1126 (6th Cir 1997). The Sixth Circuit guides district courts to "dispose of all motions before trial if they are capable of determination without trial of the general issue." *United States v. Jones*, 542 F.2d 661, 665 (6th Cir. 1976). The Federal Rules of Criminal Procedure "clearly envision that a district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *Jones*, 542 F.2d at 664. Courts "must view the [i]ndictment's factual allegations as true, and must determine only whether the [i]ndictment is 'valid on its face.'" *United States v. Campbell,* No. 02-80863, 2006 WL 897436, at *2 (E.D.Mich. April 6, 2006) (citing *Costello v. United States,* 350 U.S. 359, 363, (1956)).

## **ARGUMENT**

### I. THE OUTRAGEOUS GOVERNMENT CONDUCT DEFENSE IS NON-EXISTENT IN THE SIXTH CIRCUIT.

Torres-Carmona invokes the outrageous government conduct doctrine, claiming that because the USCIS sent a letter to him as a ruse to arrest him in a secure environment that the government's actions were somehow outrageous. Conspicuously, Torres-Carmona cites no Sixth Circuit case law to support his theory. In reality, it appears that the Sixth Circuit has not

found a set of facts yet to apply this doctrine to in order to dismiss an indictment. *See United States v. Harney*, 934 F.3d 502, 506-507 (6th Cir. 2019).

As the Sixth Circuit has recognized, the outrageous government conduct theory enjoys no binding precedent. In *United States v. Tucker*, 28 F.3d 1420, 1426-1427 (6th Cir. 1994), the court noted that,

> Based on the lack of binding precedent from either the Supreme Court or the Sixth Circuit, we are of the view that this panel is not required to recognize the "due process" defense. Moreover, there are three strong reasons for concluding that such a defense simply does not exist: (1) government conduct which induces a defendant to commit a crime, even if labelled "outrageous," does not violate that defendant's constitutional right of due process; (2) the district court lacked authority to dismiss the indictment for governmental misconduct where no violation of an independent constitutional right has been shown; and (3) continued recognition of this "defense" stands as an invitation to violate the constitutional separation of powers, intruding not only on the province of the Executive Branch but the Legislative Branch as well.

The *Tucker* Court concluded that "there is no authority in this circuit which holds that the government's conduct in inducing the commission of a crime, if 'outrageous' enough, can bar prosecution of an otherwise predisposed defendant under the Due Process Clause of the Fifth Amendment." *Id*. at 1424.

In an unpublished Sixth Circuit opinion, the court reviewed whether law enforcement faking a suicide threat to induce defendant to resume communications during an undercover sting operation involving an alleged minor was outrageous government conduct. *See United States v. Miller*, No. 16-3557, 696 Fed.Appx. 696 (6th Cir. June 13, 2017). The *Miller* Court stated that although faking a suicide threat is concerning "the Sixth Circuit has not adopted the outrageous government conduct defense." *Id*. at 699.

In yet another Sixth Circuit case, *United States v. Warwick*, 167 F.3d 965, 974 (6th Cir. 1999), the court stated that "we have consistently rejected defendants' attempts to argue that the government's conduct in inducing them to commit the crimes charged was so outrageous as to deprive them of their constitutional rights." A defendant must "establish that the police misconduct rises to the level of a constitutional violation." *Id*. at 973.

In *United States v. Blood*, 435 F.3d 612, 630 (6th Cir. 2006) the Sixth Circuit restated that "[w]e have held that the outrageous government conduct defense is not available where the defense is based either on a theory of government inducement, (citing *United States v. Tucker*, 28 F.3d 1420, 1422 (6th Cir.1994)), or on a theory that the 'undercover officer's involvement in creating [the] crime was so significant that criminal prosecution violates due process,' id. (citing *United States v. Mack*, 53 F.3d 126 (6th Cir.1995))."

In another unpublished Sixth Circuit opinion, the court gave some hope to defendants that there could be a case where government conduct was so outrageous that it may violate a defendant's due process. *See United States v. Flowers*, Nos. 15-3988, 15-3990, 15-3991, 15-4003, 15-4028, 712 Fed.Appx. 492, 496 (6th Cir. October 24, 2017). The *Flowers* Court commented, "[u]nder the outrageous government conduct defense, government involvement in a crime may be so excessive that it violates due process and requires the dismissal of charges against a defendant even if the defendant was not entrapped." *Id*. at 497.

However, in a more recent published case, the Sixth Circuit yet again threw shade on the outrageous government conduct defense. *United States v. Harney*, 934 F.3d 502, 506-507 (6th Cir. 2019). In *Harney*, the FBI gained control of a child pornography website and continued

5

operating the site in order to catch people viewing child pornography. *Id*. at 504. In discussing the outrageous conduct defense, the *Harney* Court stated,

> Even if we pretend once more that such a defense might exist, Harney did not establish any basis for invoking it. The government after careful consideration made the difficult decision to continue operating this website briefly. That had a downside (exposing the pictured children to more harm) and an upside (apprehending individuals who fuel the demand for more child pornography)… Lest all sting operations be suppressed, this conduct does not require suppression of the evidence or dismissal of the indictment.

*Id*. at 507.

Finally, in *United States v. Lewis*, Crim. No. 3:21-cr-00021-GFVT, 2024 WL 2980956 *5 (E.D. Ky. June 13, 2024), the district court doubted the outrageous conduct defense exists in the Sixth Circuit, "[e]ven if the Sixth Circuit recognized the 'outrageous government conduct' defense, which the Court doubts that it does, hardly anything about the government's conduct can be considered so outrageous as to shock the conscious." What is clear from this line of cases, is that the Sixth Circuit treats the outrageous government conduct doctrine as extremely narrow and has never found a case in which it warranted dismissal.

The fact that DHS used a ruse to lure Torres-Carmona to a secure location to arrest him does not make the arrest unreasonable and certainly does not "shock the conscious". Law enforcement has long employed subterfuge as a tactic in policing. *See United Staes v. Copeland*, No. 95–5596, 1996 WL 306556 *3 (6th Cir. June 6, 1996). In *Copeland*, a plain clothed police officer knocked on defendant's door asking to use the phone claiming she had car trouble in order to get the defendant to open the door so they could execute a valid search warrant. *Id*. at *1. The Sixth Circuit found the ruse reasonable commenting, "Copeland's assertion in this issue relates to the officers' use of a ruse in approaching the door, and she seems

to suggest that, in and of itself, the use of such a ruse converts what would be reasonable into something constitutionally unreasonable. There is no support for this proposition, and we do not accept it." *Id*. at * 3.   The *Copeland* Court continued,

> We suspect that it may often be the case in search warrant executions that the safety of officers and citizens alike can be enhanced if the home's occupants are brought into the open—even, if needs be, by the use of subterfuge… Many proper and beneficial purposes may be served by techniques which include a ruse. The enforcement of our criminal laws, certainly, must be done within constitutional bounds, but is not a sporting contest in which officers must obey "no-bluff" rules; the use of such a technique in this case is of no constitutional significance standing alone.

*Id*.; see also *Fair v. Jones*, No. 05-CV-72036-DT, 2007 WL 201013 *7 (E.D. MI. 2017)("Moreover, the fact that the police used a ruse to get Petitioner to come to the police station to effectuate his arrest does not render the arrest invalid under the Fourth Amendment.").

In the case at bar and similar to *Jones*, USCIS sent a letter to Torres-Carmona asking him to come to the USCIS office for an immigration interview.   This was a ruse to arrest Torres-Carmona.   This type of ruse is commonplace in law enforcement and did not offend any individual constitutional rights.   Even Torres-Carmona admits that he could be taken into custody (arrested) at any time.   (DN 23-1, p. 6).   DHS could have arrested Torres-Carmona at the Jefferson County Hall of Justice when he was set to appear on either his theft or strangulation cases.   But arresting someone in a courthouse where hundreds of people are milling about, including friends or family of a defendant, makes the arrest dangerous for the DOs, the defendant, and the public.   As stated in *Copeland*, "[m]any proper and beneficial purposes may be served by techniques which include a ruse."   A ruse that brings a person into a secure environment away from the public, safeguards everyone involved.   In fact, had the DOs arrested Torres-Carmona in public, Torres-Carmona's assault and resisting arrest could have

injured innocent bystanders and/or instigated a potentially serious response from bystanders, which would have escalated the situation.

In addition, Torres-Carmona wasn't arrested for no reason. Torres-Carmona was taken into custody because of his prior criminal arrests for theft and strangulation. Torres-Carmona was not a United States citizen but was allowed to enter the country. While a guest in this country, Torres-Carmona was arrested for stealing cooking oil from a business and then arrested for strangling his girlfriend. Based on committing crimes in this country, Torres-Carmona was taken into custody. As discussed in *Tucker*, the core principle underlying the doctrine is that the government's conduct must violate some independent constitutional right, or be so egregious as to shock the universal sense of justice. Sending a letter to Torres-Carmona, who has committed multiple crimes, including a violent crime, requesting that he report to a safe and secure government building to be arrested hardly shocks the conscious. The ruse was a commonsense law enforcement tactic to keep Torres-Carmona, the DOs and the public safe. Torres-Carmona has failed to show an independent constitutional violation.

Here, Torres-Carmona asserts that the immigration-interview letter was a ruse to facilitate his arrest. But mere subterfuge or undercover methods (even if aggressive) do not by themselves violate due process absent a violation of a clear constitutional guarantee. Torres-Carmona knowingly responded to the interview letter; the arrest was effected by immigration/deportation officers with lawful authority; the subsequent resistance and assault of officers occurred in the context of the arrest process. The United States has not coerced a person into committing an offense he otherwise would not have. The factual record does not approach the type of "shock the conscience" government misconduct that the doctrine envisions.

A hallmark of the outrageous government conduct argument is that government agents not only set up the criminal scenario but manufacture the crime itself by luring or pressuring a defendant into action he otherwise would not have taken. Here, the charged offense is assault on two deportation officers in the course of resisting arrest (18 U.S.C. § 111(a)). Torres-Carmona does not claim the United States induced him to assault the deportation officers; the arrest sequence was legitimate (even if based on the ruse letter) and his resistance was voluntary and independent. Additionally, the United States' enforcement of immigration laws and its decision to utilize an interview letter to effect the arrest of Torres-Carmona does not automatically amount to outrageous misconduct. The United States has strong interests in removal proceedings, and nothing in the record suggests the interview letter was issued for the sole purpose of facilitating an assault or a criminal trap. The deportation officers' presence, and Torres-Carmona's reaction, create the criminal offense independently of the investigative step. Thus, the United States did not "create" the assault scenario.

**WHEREFORE**, the United States respectfully requests the Court to enter the attached order overruling defendant's motion.

Respectfully submitted,

Kyle G. Bumgarner
United States Attorney

s/ Joseph R. Ansari
Joseph R. Ansari
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
Phone: (502) 582-5911
Fax: (502) 582-5067
Joseph.Ansari@usdoj.gov

## **CERTIFICATE OF SERVICE**

    I hereby certify on November 14, 2025, I electronically filed this document through the CM/ECF filing system, which will serve opposing counsel via electronic mail.

                                           s/ Joseph R. Ansari
                                           Joseph R. Ansari