UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


UNITED STATES OF AMERICA                                          PLAINTIFF


vs.                                        CRIMINAL ACTION NO.:  3:25-CR-132-RGJ
                                                          *Electronically Filed*


LARYEN TORRES-CARMONA                                              DEFENDANT

**MOTION IN LIMINE TO INTRODUCE
DEFENDANT'S PREVIOUS ARRESTS OR, IN THE ALTERNATIVE, TO EXCLUDE
ANY REFERENCE TO TORRES-CARMONA'S IMMIGRATION BACKSTORY, AND
<u>TO EXCLUDE IRRELEVANT EVIDENCE</u>**

The United States provided notice to defendant Laryen Torres-Carmona (hereinafter

"Torres-Carmona") that it intends to introduce at the trial evidence that: (1) defendant Torres-

Carmona was arrested for theft on August 29, 2024, in Jefferson County, Kentucky and (2)

defendant Torres-Carmona was arrested for strangulation on July 7, 2025, in Jefferson County,

Kentucky.  [Exhibit A-Notice].  This notice stated that the United States was seeking to

introduce these two arrests because the arrests were relevant admissible evidence pursuant to

Rules 401, 402, and 403.  The proffered evidence is Res Gestae and/or evidence that is

inextricably intertwined with the charged conduct.   In addition, the evidence sought to be

introduced by the United States is not offered for a prohibited purpose but is instead offered to

prove Torres-Carmona's absence of mistake or accident and intent relative to his assaulting,

resisting, opposing, impeding, intimidating or interfering with the two Immigration Enforcement

Operations Deportation Officers (DO) when they attempted to arrest Torres-Carmona.

Specifically, the reason Torres-Carmona was being taken into custody was that he had been

identified as having been arrested for theft and strangulation, which made him eligible for deportation.

If the court declines to allow the United States to introduce any reference to Torres-Carmona's arrests, the United States moves to exclude any mention or reference by the defense as to Torres-Carmona's immigration status (except that he is a Cuban citizen), including his parole into the United States and the U.S. Citizenship and Immigration Services' (USCIS) ruse letter to Torres-Carmona requesting his presence for an immigration interview. The jury should be limited to the events only surrounding the assault at that point.

In addition, the United States moves to exclude any attempt by Torres-Carmona to present evidence collaterally attacking his arrest, denial of his I-485 Application, the current Administration's immigration policies on removal/deportation, the Cuban Adjustment Act, and allegations that he faces persecution in his home country of Cuba. None of these defenses are relevant or permissible and seek only to inflame the passions of the jury.

## FACTS AND GENERAL TIMELINE OF EVENTS

On July 25, 2023, Torres-Carmona, a Cuban citizen, applied for admission to the United States at the Nogales, AZ DeConcini Port of Entry, by booking an appointment via CBP One. (DN 23-2). Torres-Carmona did not possess valid entry documents. (Id.). Torres-Carmona was ordered to appear in front of an Immigration Judge at 601 West Broadway, Louisville, Kentucky on January 22, 2024. (DN 23-3). Torres-Carmona was given a new court date of June 3, 2027. On August 29, 2024, Torres-Carmona was arrested for theft and on July 7, 2025, he was arrested for strangling his girlfriend. [Exhibits B1 & B2]. On October 7, 2025, the theft charge was dismissed based on payment of restitution and the strangulation case is set to be dismissed upon completion of Batterers Intervention Program. (See 24-M-006300 and 25-F-005448). These

state district court orders were entered after Torres-Carmona was indicted in the above-styled case. (Id.).

On July 30, 2025, U.S. Citizenship and Immigration Services (USCIS), Department of Homeland Security (DHS) emailed Enforcement and Removal Operations (ERO) Louisville identifying Torres-Carmona, among others, as being eligible to be taken into custody based on his criminal arrests. (DN 23-5). A notice was sent to Torres-Carmona requesting he come to the USCIS building, located at 411 S. 4th Street, Louisville, Kentucky for his immigration interview. The USCIS building is a secure building providing safety for both Torres-Carmona and the Deportation Officers (DO). A secure facility was optimal to arrest Torres-Carmona based on his violent history of strangling his girlfriend. On August 26, 2025, Torres-Carmona appeared and interviewed with an immigration officer. On the same day, his I-485 Application was administratively closed. (DN 23-7).

Following the interview, a Supervisory Immigration Services Officer (SISO) with USCIS escorted Torres-Carmona to a secure hallway where three DOs awaited him. DO A.B., fluent in Spanish, explained who the DOs were, and that Torres-Carmona was being arrested. [Exhibit C-A.B. Statement]. Torres-Carmona became combative, shoving two of the DOs and resisting arrest. [Exhibit D-SISO Statement]. Torres-Carmona continued to resist arrest until two DOs were able to finally handcuff him and lead him out of the building. [Id.].

On September 3, 2025, Torres-Carmona was charged in a two-count indictment with assaulting, resisting, or opposing two DOs pursuant to 18 U.S.C. §111(a)(1). (DN 7). On November 6, 2025, Torres-Carmona filed a motion to dismiss the indictment for outrageous government conduct. Torres-Carmona argued that the letter sent by USCIS to him requesting that he report to USCIS for an immigration interview was an "outrageous" and an "unreasonable

ruse". (DN 23-1, p. 6). He further argued that the ruse that led to the outrageous conduct began with an email from USCIS to ERO on July 30, 2025, identifying Torres-Carmona for removal based on his criminal history. (Id.). Torres-Carmona argued that the current Administration's "recent wave of indiscriminate mass detention — promulgated by a new nationwide campaign to collude with the immigration courts to detain people attending their immigration court hearings – has created a dramatic shift in immigration enforcement policy." (Id.). Torres-Carmona further attempted to deflect blame for his assault, claiming that generally people are terrified by masked muscular ICE agents[1],

> The terror that many people have had when cornered by masked individuals who look like they are about to head to the gym for a workout rather than law enforcement, has been a fear that has been well documented in recent months. Often times these incidents have occurred in locations where aliens/undocumented persons believe they are taking lawful and correct action to become citizens. Thus, they have little to no idea what is coming before the handcuffs are placed. In this particular case, it is especially outrageous conduct because the Government here resorted to subterfuge, in that Mr. Torres's presence in that room of USCIS was created on a pretense and sham of an improper administrative closure of his immigration case. The above deceitful conduct did not facilitate the discovery or suppression of ongoing criminal activity; thus, it served no justifying social objective. Rather, it put the law enforcement authorities in the position of creating new crimes for the sake of arresting a person that, despite having the ability to arrest him at any time, had been persuaded to appear in a tense and confusing situation to hasten the accomplishment of their goal. It was this evil of law enforcement officers fraudulently creating a situation for a person who is otherwise innocent in order to lure them to a situation highly likely to result in the possible commission of this particular type of offense.

(Id. at p. 10).

## **ARGUMENT**

I.    **Torres-Carmona's prior arrests for theft and strangulation are essential facts that are inextricably intertwined and explain and complete the story of the charged offenses.**

---

[1] The DOs in this case were not masked.

The United States seeks to inform the jury that Torres-Carmona had two prior arrests as *res gestae* evidence. *Res gestae* evidence is an exception to FRE 404(b). It includes acts that are "inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Brown*, 888 F.3d 829, 836 (6th Cir. 2018) *citing United States v. Old*, 309 Fed. Appx. 967, 974 (6th Cir. 2009) *quoting United States v. Hardy*, 228 F. 3d 745, 748 (6th Cir. 2000). The *Hardy* Court also stated that:

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*Hardy*, 228 F. 3d at 748 (citation omitted).

In addition, the Sixth Circuit found no error when a district court allowed the jury to hear the facts immediately occurring before the arrest of the defendant, including that defendant struggled with the police. See *United States v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011). The *Marrero* Court stated,

> The circumstances under which police officers apprehended Marrero are inextricably intertwined with evidence of the possession crimes with which he was later charged. *See Henderson*, 626 F.3d at 338. Marrero's attempt to hide from police officers inside a dryer, the officers' discovery of Marrero, and the ensuing struggle all have a temporal connection to, and completes the story of, the charged offense. *See Hardy*, 228 F.3d at 748. Therefore, it was not error, let alone plain error, for the district court to allow the admission of this evidence.

*Id*.

Relevancy is a low bar. FRE 401 states "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

It should also be noted that the Louisville Metro Council recently proposed a new city ordinance prohibiting law enforcement from wearing masks. Councilman JP Lyninger was quoted in a WDRB article that ran on October 31, 2025, "Residents are terrified by the unaccountable and unconstitutional actions taken by ICE in recent months, Lyninger said in a news release Friday. Louisville should not be a place where secret police operate in the streets and drag people away from their homes, schools, workplaces, and places of worship. Law enforcement officers are expected to be identifiable as public servants to uphold the civil liberties of our residents." *See https://www.wdrb.com/news/louisville-councilman-files-legislation-to-prohibit-law-enforcement-from-wearing-masks/article_820d92f6-c0a5-43f8-a6be-a1d17403b544.html*. The proposed ordinance was linked to the news article. One of the paragraphs singled out ICE agents, "WHEREAS, federal law enforcement officers such as Immigration and Customs Enforcement (ICE) agents have been noted to wear masks to disguise themselves from accountability and transparency in operations that are widely considered abusive and unconstitutional."[2] On December 1, 2025, WHAS11 ran a similar news story quoting Councilman Lyninger, "Residents are terrified by the unaccountable and unconstitutional actions taken by ICE... Louisville should not be a place where secret police operate in the streets and drag people away from their homes, schools, and workplaces." WHAS11's website airing the news story contains the following caption: "New legislation would amend mask ordinances to prevent ICE agents from concealing identities, addressing community concerns over immigration enforcement actions. *See https://www.whas11.com/video/news/local/louisville-proposes-law-to-block-ice-agents-from-wearing-masks-during-raids/417-5aef975d-9bc7-4383-826b-4a5151b99a56.*

---

[2] https://louisvilleky.primegov.com/viewer/preview?id=0&type=8&uid=1e5ab1dd-fc65-4c80-9cb8-b5baa0225a11&utm_medium=email&utm_source=govdelivery.

A court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* FRE 403. Evidence of Torres-Carmona's arrests help prevent confusion of the issues and provides context as to why Torres-Carmona was summoned to USCIS and arrested, which prevents misleading the jury. The evidence will not delay the trial, waste time, and is not cumulative. Torres-Carmona's only argument for exclusion would be unfair prejudice. However, without the evidence, the United States will be prejudiced, and the jury will be misled based on a false backstory being perpetrated by Torres-Carmona.

The evidence of the arrests is necessary for even a moderately complete recounting of the events of August 26, 2025, as it provides important context as to why Torres-Carmona was summoned to the USCIS building to be detained by three DOs. It is also the purest and most factually accurate version of what transpired. Such evidence bears a close temporal relationship with the charged crime and forms an integral part of the witness testimony of the SISO and DOs. The reason Torres-Carmona was summoned to appear at USCIS to be arrested was based on his prior arrests. In addition, there were three DOs present to arrest Torres-Carmona because he had a previous strangulation arrest, which made him potentially dangerous.

If the United States is prohibited from introducing this evidence, the jury will only hear that USCIS sent a letter to Torres-Carmona directing him to come in for an interview and then following that interview he was taken to three awaiting DOs to be arrested. Background evidence as to why Torres-Carmona was asked to come to the USCIS Office and why three DOs were waiting to detain him provides important contextual evidence that is relevant and more probative than prejudicial. Without the reason for Torres-Carmona's potential deportation and

why a letter was sent to him to appear at USCIS, the jury is left to believe a false narrative being perpetuated, that Torres-Carmona was simply being deported because he was not a United States citizen. The jury is left to imagine that ICE brought Torres-Carmona to the USCIS office under false pretenses so that plain clothed ICE agents could drag him away and deport him, similar to arguments already made by Torres-Carmona and similar to statements made by a Louisville city councilman and aired by WHAS11 and WDRB, including language in the proposed city ordinance. Some jurors may be familiar with the WDRB article and WHAS11 news story or the proposed city ordinance. Torres-Carmona is then free to claim at trial that he was shocked that he was being detained, did not understand why he was being detained, and assaulted the DOs out of fear, confusion, and self-defense. This type of jury nullification is improper. The jury deserves to hear the real backstory of why Torres-Carmona was summoned to the USCIS office to be detained. To limit the potential for prejudice, the Court can issue a limiting instruction to the jury.

## II.    Torres-Carmona's prior arrests are highly relevant and are not being used to show propensity.

Under Rule 404(b)(2), the United States may "introduce evidence of 'other crimes, wrongs, or acts' committed by the defendant so long as the evidence is not used merely to show propensity and if it 'bears upon a relevant issue in the case.'" *United States v. Emmons*, 8 F.4th 454, 474 (6th Cir. 2021). Rule 404(b)(2) provides a "non-exhaustive" list of permissible uses of "other acts" evidence, which includes "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*. In determining whether to admit "other acts" evidence under 404(b), a district court must consider (1) "whether there is sufficient evidence that the other act in question actually occurred;" (2) "whether the evidence of the other act is

probative of a material issue other than character;" and (3) "whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect." *Id*.; *See also United States v. Mack,* 258 F.3d 548, 553 (6th Cir. 2001); *United States v. Johnson*, 27 F.3d 1186 (6th Cir. 1994); *United States v. Johnson*, No. 22-6036, 2023 WL 8358590 *4 (6th Cir. November 2, 2023).

Introduction of a defendant's prior criminal convictions to prove lack of absence of mistake or accident "must be to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove." *United States v. Bell*, 516 F.3d 432, 442 (quoting *United States v. Merriweather*, 78 F.3d 1070, 1076 (6th Cir. 1996)). "Thus, for other acts evidence to be admissible for the purpose of showing absence of mistake or accident, the defendant must assert a defense based on some type of mistake or accident." *Id*. However, a court can admit 404b evidence in anticipation of a defendant's tactics. *See United States v. Ray*, 549 Fed. Appx. 428, 432 (6th Cir. December 18, 2013). "But the *Merriweather* court appreciated the complexities faced by trial judges weighing evidentiary decisions, stating that whether 404(b) evidence is admissible, 'will sometimes be unclear until late in the trial because ... [it] often depends on the defendant's theory and the proofs as they develop.'" *Id*. (quoting *Merriweather*, 78 F.3d at 1076). The *Ray* Court agreed that the trial court can admit 404b evidence when the defense telegraphs its use of specific defense tactics,

> Thus, *Merriweather* allows the government, under the watchful eye of the trial judge, to offer evidence necessary to anticipate a defendant's tactics at trial. It does not, as Ray would have us believe, restrict the prosecution's evidence in its case-in-chief to only that evidence necessary to prove elements of the crime or to address material issues that the defendant has himself already put in issue. The defense cannot immunize itself from the introduction of relevant 404(b) evidence by the simple expedient of silence. In fact, this very case demonstrates why such latitude must be afforded the prosecution. The first (and only) time the defense raised the

issue of mistake (by implying that Ray might not have known the contents of the bag), was in its closing argument. Under *Merriweather*, once the prosecution had anticipated such a tactic, it was permitted under Rule 404(b) to admit the evidence necessary to counteract the effects of a potential eleventh-hour introduction by the defense because it was "conceivable" that the defendant could have employed those tactics.

*Id*.

The United States must prove at trial that Torres-Carmona (1) forcibly (2) assaulted, resisted, opposed, impeded, intimidated, or interfered with (3) a federal officer (4) in the performance of his official duty, and (5) caused physical contact with the officer. *See United States v. Gagnon*, 553 F.3d 1021 (6th Cir. 2009); *see also United States v. Rafidi*, 829 F.3d 437, 445 (6th Cir. 2016). Torres-Carmona did not have to know that his victims were federal officers. *See United States v. Feola*, 420 U.S. 671, 684 (1975). "All the statute requires is an intent to assault, not an intent to assault a federal officer. A contrary conclusion would give insufficient protection to the agent enforcing an unpopular law, and none to the agent acting under cover." *Id*. However, based on evidence presented, the jury may be instructed, "[b]ut you can't find the Defendant committed this offense if you believe that the Defendant acted only on a reasonable good-faith belief that self-defense was necessary to protect against an assault by a private citizen, and you have a reasonable doubt that Defendant knew that the victim was a federal officer."[3] *See United States v. John F. Johnson*, 3:21-CR-31-BJB, DN 55 (W.D. Ky., May 27, 2022); *See also United States v. John F. Johnson*, No. 22-6036, 2023 WL 8358590 * 3 (6th Cir. November 2, 2023).

Torres-Carmona has telegraphed his defense in his motion to dismiss the indictment. (DN 23-1). Torres-Carmona argues that USCIS "persuaded [Torres-Carmona] to appear in a

---

[3] The United States does not concede this instruction is proper and, in fact, will argue that this instruction should not be given to the jury because Torres-Carmona was inside of a secure federal facility and had no doubt the DOs were federal officers and not private citizens.

tense and confusing situation..."  (Id., p. 10).  Torres-Carmona further claims that "this evil of law enforcement officers fraudulently creating a situation for a person who is otherwise innocent in order to lure them to a situation highly likely to result in the possible commission of this [assault]..." (Id.).   Torres-Carmona will likely claim at trial that he was confused, afraid, and acted in self-defense during the encounter with the DOs.

Once Torres-Carmona raises self-defense, to disprove a claim of self-defense, the United States must prove that Torres-Carmona intentionally made physical contact with the DOs and that he knew the DOs were federal officers.  The fact that Torres-Carmona knew that he had two prior arrests, one of which occurred approximately one month prior to coming to the USCIS office, negates his claim of confusion and shows he was not acting in self-defense.  It specifically demonstrates that Torres-Carmona did not mistakenly or accidently assault, resist, or oppose the DOs because he was confused and afraid.  Rather, Torres-Carmona intentionally assaulted, resisted, and opposed the DOs because he knew he had two prior arrests with both cases pending at the time of his actions and did not want to be taken into ICE custody to be deported.  Torres-Carmona has already argued that the "recent wave of indiscriminate mass detention — promulgated by a new nationwide campaign to collude with the immigration courts to detain people attending their immigration court hearings – has created a dramatic shift in immigration enforcement policy."  Torres-Carmona clearly understood that he could be arrested when he reported to the USCIS building on August 26, 2025.

The United States can show that Torres-Carmona had been arrested on two previous occasions.  The arrests are probative of a material issue other than character.  As stated above, the arrests negate the claim of self-defense and show that his assaulting, opposing, and resisting actions were not based on a lack of mistake or accident but rather were intentional acts.  The

arrests, in and of themselves, also demonstrate why USCIS requested Torres-Carmona to appear at the USCIS building. Finally, the probative value of the arrests is substantially outweighed by the potential prejudicial effect. The arrests complete the story and without the jury hearing the arrests occurred are not being told the entire accurate story. The jury is then left to conjure up numerous nefarious reasons why USCIS brought Torres-Carmona to the USCIS building on August 26, 2025. Torres-Carmona would be permitted to claim self-defense without the United States being able to refute his claim. The probative value of the arrests and allowing the jury to hear the true facts far outweighs the prejudicial effect. The arrests are what they are-the triggering factor leading to the adverse immigration consequences, which ultimately brought Torres-Carmona to the USCIS building on August 26, 2025, to be arrested, an arrest that he resisted and opposed after being informed who the agents were. Thus, the jury should be informed of both of Torres-Carmona's arrests in the context of why USCIS requested Torres-Carmona to come to the USCIS building and why Torres-Carmona was not acting in self-defense when he assaulted, resisted, and opposed the DOs.

### III.    In the alternative, if the jury is not informed of Torres-Carmona's prior arrests, the jury should not be informed of Torres-Carmona's immigration backstory.

In the alternative, if the Court does not allow the jury to hear the most factually accurate version of the events in this case, the information told to the jury should be extremely limited. The jury should only be told that Torres-Carmona, a Cuban citizen, reported to the USCIS building on August 26, 2025, where DOs attempted to arrest him and Torres-Carmona assaulted, resisted, and opposed the DOs. Essentially, to prevent prejudice to the United States, the jury should be limited to the basic facts surrounding the assault only.

IV.    **Torres-Carmona's defenses should be limited to those which can be properly raised for the offenses charged.**

The United States anticipates that Torres-Carmona may attempt to present evidence collaterally attacking his arrest, denial of his I-485 Application, the current Administration's immigration policies on removal/deportation, the Cuban Adjustment Act, and allegations that he faces persecution in his home country of Cuba.  Any defenses raising these arguments would be irrelevant under Fed. R. Evid. 401 and purely jury nullification.  Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. See Fed. R. Evid. 401. If Torres-Carmona presents these issues, they would be irrelevant to his charges of assaulting, resisting, and opposing federal officers.

Assuming that there is scant relevance to Torres-Carmona's arguments, then this Court should exclude the evidence pursuant to Fed. R. Evid. 403. Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. See Fed. R. Evid. 403. "Evidence is unfairly prejudicial only if it has 'an undue tendency to suggest decision on an improper basis,' commonly, . . . an emotional one." See Fed. R. Evid. 403, Advisory Committee's Note. "Unfair prejudice may arise if facts are likely to arouse jury hostility or sympathy." *United States v. Moore*, No. 90-5635, 1991 WL 1103 at *2 (6th Cir. Jan. 8, 1991); *see also Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) ("It is unfairly prejudicial if it 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish,' or 'may cause a jury to base its decision on something other than the established propositions in the case.'").

-13-

The Sixth Circuit has previously denied a defendant's motion to admit testimony of his past experiences in South Africa and exhibits related to his immigration proceedings in a 111(a)(1) assault case. *See United States v. Mtola*, No. 14–3262, 598 Fed. Appx. 416 (6th Cir. January 30, 2015). Specifically, the *Mtola* Court stated, "[t]he other-acts evidence proffered in this case—i.e., testimony about Mtola's experiences in South Africa and Mtola's motions to reopen and their supporting documents—was offered by the defendant. None of that evidence is relevant to any material fact. Accordingly, Mtola's argument that his proffered evidence is admissible under Rule 404(b)(2) and/or the res gestae exception is without merit." *Id*. at 420.

In the case at bar, Torres-Carmona is charged with assaulting, resisting, and opposing two federal officers. Whether USCIS properly denied his I-485 Application, how the Cuban Adjustment Act effected his I-485 Application, or the current Administration's policies on immigration are not material to any element of the current charges. In addition, a jury will be improperly swayed if Torres-Carmona testifies regarding any alleged persecution he might face in Cuba or attempts to relitigate his underlying immigration proceedings. Those allegations also are not relevant to the current charges and are only meant to gain sympathy from the jury.

For the foregoing reasons, the Court should limit the defenses raised by the defendant to those which can be properly raised for the offenses charged, as arguments to issues already decided on would be mere subterfuge to appeal to the jury's emotions and irrelevant to the case at hand.

Respectfully submitted,

Kyle G. Bumgarner
United States Attorney

s/ Joseph R. Ansari
Joseph A. Ansari
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
Phone: (502) 582-5911
Fax:   (502) 582-5067
Joseph.Ansari@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2025, I electronically filed the foregoing response with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to Defendant.

s/ Joseph Ansari
Joseph Ansari
Assistant United States Attorney