UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Plaintiff |
| v. | Criminal Action No. 3:25-cr-132-RGJ |
| LARYEN TORRES-CARMONA | Defendant |

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Defendant, Laryen Torres-Carmona ("Torres-Carmona") moves to dismiss the pending matter because of "conduct by the government, which has been sufficiently outrageous and shocking to the universal sense of justice." [DE 23]. The United States responded. [DE 24]. For the reasons below, Torres-Carmona's Motion to Dismiss [DE 23] is **DENIED**.

### I.   Factual Background

Torres-Carmona is a native and citizen of Cuba. [DE 1-1 at 3]. His primary language is Spanish. [DE 23-4 at 102]. On July 25, 2023, Torres-Carmona appeared at the United States border in Nogales, Arizona. [DE 1-1 at 3]. "Due to the lack of documents" Torres-Carmona was paroled into the United States and served with a Notice to Appear ("NTA") for January 22, 2024. [*Id.* at 4]. His parole was set to expire on June 27, 2025. [*Id.*]. His NTA hearing date was rescheduled to October 16, 2025, and rescheduled again to June 3, 2027. [DE 23-1 at 63]. During his time in the United States, Torres-Carmona had been charged with two crimes. One on August 29, 2024, for theft and trespassing. [DE 1-1 at 4]. And then separately on July 17, 2025, for strangulation of his girlfriend. [*Id.*].

On July 30, 2025, U.S. Citizenship and Immigration Services ("USCIS"), together with the Department of Homeland Security ("DHS"), emailed Enforcement and Removal Operations

Louisville ("ERO") identifying Torres-Carmona as being eligible to be taken into custody based upon his criminal arrests. [DE 23-1 at 64; DE 24 at 125]. Following the email, USCIS mailed a letter to Torres-Carmona requesting him to come to the USCIS building at 411 S. 4th Street, Louisville, Kentucky to complete his immigration interview and his Adjustment of Status Form I-485. [*Id.*].

Upon arrival at the USCIS building, USCIS provided Torres-Carmona with an Administrative Closure of his Form I-485. [DE 24 at 125]. Then following his immigration interview, Torres-Carmona was escorted into a "secure hallway where three [Deportation Officers ("DO")] awaited" to arrest him. [*Id.*]. The DOs are members of Immigration and Customs Enforcement ("ICE"). [DE 23-1 at 65; DE 24 at 125]. The DOs then provided Torres-Carmona with an arrest warrant. [DE 23-1 at 65]. Then, in Spanish, DO A.B. explained to Torres-Carmona who they were and that they were arresting him pursuant to the warrant. [DE 24 at 125]. Upon initiating arrest, Torres-Carmona allegedly "became combative, shoving two of the DOs and resist[ing] arrest." [*Id.*]. Torres-Carmona "continued to resist arrest until two DOs were able to finally handcuff him and lead him out of the building." [*Id.*]. As a result of those actions, Torres-Carmona has been indicted with resisting arrest and assaulting the two DOs. [DE 7 at 13-14].

Torres-Carmona brings this motion to "challenge the constitutionality of [his] arrest." [DE 23-1 at 65]. Torres-Carmona "does not contest the lawfulness of his administrative arrest." [DE 23-1 at 68]. But instead, Torres-Carmona solely asserts that the "tactics used by USCIS and ERO officers to obtain the arrest" were "outrageous" and an "unreasonable ruse" rising to the level of a due process violation. [*Id.*]. Therefore, Torres-Carmona states, the "indictment must be dismissed as a matter of due process." [*Id.*].

## II. Discussion

### A. Standard

Rule 12 of the Federal Rules of Criminal Procedure control motions to dismiss indictments. "A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Civ. P. 12. District courts can rule on motions to dismiss indictments before trial if it "involves questions of law instead of questions of fact on the merits of criminal liability." *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997). But still, district courts may "ordinarily make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate factfinder." *Id.* Fed. R. Civ. P. 12 "encourage[s] district courts to entertain and dispose of pretrial criminal motions before trial if they are capable of determination." *United States v. Levin*, 973 F.2d 463, 467 (6th Cir. 1992). On a motion to dismiss an indictment, "the [c]ourt must view the [i]ndictment's factual allegations as true, and must determine only whether the [i]ndictment is 'valid on its face.'" *United States v. Campbell*, No. 02-80863, 2006 WL 897436, at *2–3 (E.D. Mich. Apr. 6, 2006) (citing *Costello v. United States*, 350 U.S. 359, 363 (1956)). And lastly, a "published decision of the [Sixth Circuit]" binds its lower courts. *United States v. Clinton,* 338 F.3d 483, 489 (6th Cir. 2003).

### B. Analysis

The "outrageous conduct" doctrine stems from the dicta of *United States v. Russel,* where the Supreme Court stated, "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." 411 U.S. 423, 431-32 (1973). Based upon this statement, the Sixth Circuit has defined four factors to guide the determination of

whether police conduct violated due process principles. "These factors are: (1) the need for the type of government conduct in relationship to the criminal activity; (2) the preexistence of a criminal enterprise; (3) the level of the direction or control of the criminal enterprise by the government; (4) the impact of the government activity to create the commission of the criminal activity." *United States v. Ammons,* 2017 WL 4355670, at *1 (W.D. Ky. Sep. 29, 2017) (quoting *United States v. Johnson*, 855 F.2d 299, 304-05 (6th Cir. 1988). These factors are for "guidance only" with no one factor controlling. *United States v. Barger,* 931 F.2d 359, 363 (6th Cir. 1991).

Essentially, the defendant must show that "the government's involvement in creating his crime (*i.e.,* the means and degrees of inducement) was so great 'that a criminal prosecution for the [crime] violates the fundamental principles of due process.'" *United States v. Warwick*, 167 F.3d 965, 974 (6th Cir. 1999) (quoting *Russel,* 411 U.S. at 430). The defendant must "establish that the police misconduct rises to the level of a constitutional violation." *Id.* The defense does not apply where it is based on a theory of government inducement or entrapment. *Id.* This defense "looks only at the government's conduct and determines whether it is sufficiently outrageous so as to violate the Constitution." *Id.*

Although the Sixth Circuit has set out the above factors and guidance, it has not once found a set of facts that apply to the outrageous government conduct doctrine and has continuously doubted the existence of the defense. *United States v. Harney*, 934 F.3d 502, 506-07 (6th Cir. 2019) (holding that the Sixth Circuit has "never applied the defense.") In fact, the Sixth Circuit speculated that it had "put the defense to rest" in the 1990s. *Id.* (stating that in denying Defendant's outrageous government conduct claim, "[o]ne could be forgiven for thinking we had already put the defense to rest in 1994."). This stems from *United States v. Tucker*, where the Sixth Circuit stated that "[b]ased on the lack of binding precedent from either the Supreme Court or the Sixth

Circuit" it is likely that the outrageous government conduct "defense simply does not exist." 28 F.3d 1420, 1426-27 (6th Cir. 1994).

A recent district court opinion from within the Sixth Circuit reiterates the above sentiment. In a discussion of the "outrageous conduct" doctrine, the Eastern District of Kentucky called the doctrine a "leprechaun" and "doubts" the Sixth Circuit recognizes it at all. *United States v. Lewis,* 2024 WL 2980956, at *4 (E.D. Ky. June 13, 2024). Still, in the recent matters of *Harvey* and *Lewis,* the courts analyzed the Defendants' arguments "pretend[ing] that such a defense might exist." *Harvey,* 934 F.3d at 207.

Torres-Carmona contends that the "ruse that led to this outrageous conduct" began on July 30, 2025, when USCIS emailed ERO the list of individuals subject to removal. [DE 23-1 at 69]. After the ERO became aware that it could arrest Torres-Carmona, ERO "set the stage" for the arrest. [*Id.*]. According to Torres-Carmona, the United States led him to "believe that he was simply coming in for an interview" and nothing further. [*Id.*]. And therefore, the deceit is improper because the role of the United States has passed "the point of tolerance and acceptable deceit." [*Id.* at 69-70]. In response, the United States contends that the Sixth Circuit does not recognize the defense of outrageous government conduct. [DE 24 at 127-130]. However, even if it did, the "fact that DHS used a ruse to lure Torres-Carmona to a secure location to arrest him does not make the arrest unreasonable and certainly does not 'shock the conscious.'" [*Id.* at 129]. And although Torres-Carmona could have been arrested "at any time," by effectuating the arrest in a "secure environment away from the public" this method "safeguards everyone involved." [*Id.* at 130]. Overall, the "ruse was a commonsense law enforcement tactic to keep Torres-Carmona, the DOs, and the public safe." [*Id.*].

In other situations that involve significantly more "outrageous conduct" than the present, the Sixth Circuit has either denied the claim on the merits or because the defense does not exist, or both. For example, in *United States v. Miller,* law enforcement personnel faked a suicide threat to induce a defendant to resume communications during an undercover sting. 696 F. App'x 696, 699 (6th Cir. 2017). But the Sixth Circuit rejected the outrageous conduct theory by claiming that the Sixth Circuit "has not adopted the outrageous government conduct defense." *Id.* The Sixth Circuit rejected another contention in *United States v. Amawi*, where the alleged governmental conduct was the creation of a "terrorist cell." 695 F.3d 457, 483 (6th Cir. 2012). The Sixth Circuit summarily dismissed this claim, stating that the defense was not available in the Sixth Circuit. *Id.* at 484.

In *Harney*, law enforcement personnel operated a child pornography website, PlayPen, in hopes of "nabbing" some of its users. 934 F.3d at 504. The Sixth Circuit upheld the conduct of the United States. *Id.* There, the United States conducted a "a careful consideration" of the pros and cons of their decision. *Id*. at 507. The Sixth Circuit held that although the tactic had a downside, allowing a child pornography website to persist, the result of "nabbing" more users was overall positive and therefore justified. *Id.* at 506-07. This Court rejected a similar outrageous conduct claim on a similar set of facts involving PlayPen in *United States v. Ammons,* 2017 WL 4355670, at *2.

The United States admittedly used ruse and deceit to effectuate the arrest of Torres-Carmona. [DE 24 at 126]. But even if the Sixth Circuit recognizes "outrageous government conduct" defense, the United States' conduct here in comparison to other conduct the Sixth Circuit has permitted, such as continuing to operate a child pornography website, does not come close to "shocking the conscious."

Separately, the Sixth Circuit, and district courts within the circuit, have continuously permitted subterfuge as a tactic in policing. In *United States v. Copeland*, a plain clothed police officer knocked on a defendant's door with the intention of the defendant opening the door to execute a search warrant. 1996 WL 306556, at *3 (6th Cir. 1996). The Sixth Circuit permitted this conduct stating that there may be "[m]any proper and beneficial purposes may be served by techniques which include a ruse." *Id.* In *Fair v. Jones,* the Eastern District of Michigan stated that "the fact that the police used a ruse to get Petitioner to come to the police station to effectuate his arrest does not render the arrest invalid under the Fourth Amendment" 2007 WL 201013, at *7 (E.D. Mich. Jan 22, 2007); *see United States v. Hardin*, 539 F.3d 404, 424 (6th Cir. 2008) (holding that "a ruse. . . does not usually violate individuals'' rights").

Here, the DOs had "many proper and beneficial purposes" to conduct their ruse, especially in light of Torres-Carmona's past criminal history. *See Copeland*, 1996 WL 306556, at *3. As the United States alleges, one of the purposes of the ruse was to arrest Torres-Carmona in a "safe and secure government building." [DE 24 at 131]. Therefore, if this type of claim exists at all, and is not simply a "rare bird that is much talked about but never seen," the United States conduct is permissible. *Harney*, 934 F.3d at 506. Based upon Torres-Carmona's past criminal history, the United States believed the best course of action was to effectuate his arrest in a safe and guarded environment. Although this included a ruse, the "beneficial purposes" of the ruse outweighed the potential harmful costs. *See Copeland*, 1996 WL 306556, at *3. The United States did not want to risk harm to the public. [DE 24 at 130]. And to do so, the United States effectuated their ruse that brought Torres-Carmona into a safe environment.

Still, Torres-Carmona contends that the Court should follow *United States v. Phillips*, where the Ninth Circuit held that agents violated the Fourth Amendment by using a ruse to execute

7

an arrest. 497 F.2d 1131 (9th Cir. 1974). To begin, this Court is not bound by Ninth Circuit opinions and should not follow other circuit case law when there is binding case law by its own circuit court. *See Clinton,* 338 F.3d at 489. Second, even if this Court were to apply *Phillips* to the present, Torres-Carmona misstates a key fact in *Phillips* and its applicability. Torres-Carmona states that, the "[Ninth Circuit] assumed the agents had probably cause to arrest the defendant." [DE 23-1 at 71]. But the Ninth Circuit stated that because "the agents *did not have probable cause* to believe that Phillips was in the office building at the time of the raid and therefore the entry and subsequent arrest were invalid and the conviction must be reversed." *Phillips*, 497 F.2d at 136. (emphasis added).

Here, Torres-Carmona is factually distinct from *Phillips* as he admits that there was probable cause to arrest him. [DE 23-1 at 71 ("This is like Mr. Torres's situation in that officers had probable cause (albeit an incredibly low bar) to arrest Mr. Torres.")]. Lastly, Torres-Carmona does not cite to any Sixth Circuit case law to support his position. Nor could the Court find any on its own search. But as discussed, the Court relied upon a great wealth of Sixth Circuit case law against Torres-Carmona.

### III.    Conclusion

Accordingly, for the reasons set forth above, the motion to dismiss [DE 23] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

December 11, 2025