UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                      PLAINTIFF

v.                                       CRIMINAL NO. 3:25-CR-132-RGJ
                                                                        *Electronically Filed*

LARYEN TORRES-CARMONA                                DEFENDANT

**FIRST AMENDED TRIAL MEMORANDUM**

      Comes now the United States of America, by counsel, and submits the following first amended pretrial memorandum, in accordance with the trial Order of the Court. The United States is filing an amended memorandum based on the defendant requesting an entrapment jury instruction in his trial memorandum. As set out below, an entrapment defense changes how the United States prosecutes this case.

**Statutes Involved and Elements of Offenses**

**A. Charges**

      Count 1 of the Indictment charges the defendant with assaulting, resisting, and opposing in violation of 18 U.S.C. §111(a)(1). (DN 7). Count 2 charges the defendant with assaulting, resisting, and opposing in violation of 18 U.S.C. §111(a)(1). (Id.).

**B. Statute involved and elements of the offense (with discussion of authorities).**

- **18 U.S.C. § 111(a) – Assaulting, Resisting, Opposing**
  (1) Defendant forcibly assaulted, resisted, opposed, impeded, intimidated or interfered;
  (2) With a Federal officer or employee as described in 18 USC 1114;

      (3) While in the performance of his official duties; And
      (4) Made physical contact with the federal officer or employee.

<u>18 U.S.C. § 111 is a divisible statute that established three separate crimes.</u>

18 U.S.C. § 111 states, in pertinent part,

(a) In general. —Whoever—

(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties;
…
shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

(b) Enhanced Penalty.—

Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

      This statute sets out "three separate crimes whose elements must all be submitted to a jury." *See United States v. Rafidi*, 829 F.3d 437, 445 (6th Cir. 2016) (citing *United States v. Gagnon*, 553 F.3d 1021, 1024 (6th Cir. 2009); *see also United States v. Taylor*, 848 F.3d 476, 492 (1st Cir. 2017)(stating "the statute is plainly divisible: the subsections are set out in the alternative and each carries its own penalties"); *United States v. Hernandez–Hernandez*, 817 F.3d 207, 213 (5th Cir. 2016)(finding §111 is a divisible statute). Section (a) established a misdemeanor (simple assault) and a felony and section (b) established an enhanced felony. *Rafidi*, 829 F.3d at 445. A simple assault occurs when there is no physical contact. *Gagnon*, 553

F.3d at 1027.  As opposed to a felony, where acts involve physical contact with the victim of that assault or the intent to commit another felony. *Id*.

Regardless of whether the crime constitutes a misdemeanor or felony offense, the United States must prove the following elements under §111(a)(1): (1) forcibly (2) assaulted, resisted, opposed, impeded, intimidated, or interfered with (3) a federal officer (4) in the performance of his duties.  *Rafidi*, 829 F.3d at 445; see also *United States v. Milliron*, 984 F.3d 1188, 1194 (6th Cir. 2021)(citing *United States v. Kimes*, 246 F.3d 800, 807 (6th Cir. 2001)); see 18 U.S.C. § 111(a)).  To prove the felony, the United States must also prove (5) Defendant made physical contact with the federal officer or employee.  See *Gagnon,* 553 F.3d at 1027; *see also* 18 U.S.C. § 111(a)).  A "defendant must act 'forcibly' to violate §111." *Id*. (citing *United States v. Kimes*, 246 F.3d 800, 807 (6th Cir. 2001)).  "Force is a necessary element of any § 111 violation. However, that element may be satisfied by proof of actual physical contact…"  *United States v. Schrader*, 10 F.3d 1345, 1348 (8th Cir. 1993).  The adverb "forcibly" modifies the six verbs that follow.  *United States v. Stands Alone*, 11 F.4th 532, 535 (7th Cir. 2021); *see also Taylor*, 848 F.3d at 493.  These six verbs are six prohibited acts.  *Ganon*, 553 F.3d at 1026.  These six prohibited acts set out six types of prohibited conduct where a defendant can commit a single crime.  *United States v. McIntosh*, 753 F. 3d 388, 393 (2nd Cir. 2014).  Thus, the United States must prove that defendant forcibly assaulted, forcibly resisted, forcibly opposed, forcibly impeded, forcibly intimidated or forcibly interfered with a federal law enforcement officer to secure a conviction under §111(a).

18 U.S.C. § 111(a) is a general intent crime.  *Milliron*, 984 F.3d at 1194; see also *Kimes*, 246 F.3d at 809.  "The violation of a general intent statute, by contrast [to a specific intent

statute], requires only that a defendant 'intend to do the act that the law proscribes." *Id*. at 806. (quoting *United States v. Gonyea*, 140 F.3d 649, 651 (6th Cir. 1998)).  §111(a) only requires that a person "knowingly, consciously, and voluntarily committed an act which the law makes a crime"; it does not require "a showing of 'bad purpose,'" *See Kimes*, 246 F.3d at 807.

§111(a) does not require that the defendant know that the victim is a federal officer. *United States v. Johnson*, No. 22-6036, 2023 WL 8358590 *2 (6th Cir. November 2, 2023) (citing *United States v. Feola*, 420 U.S. 671, 684 (1975)).  "All the statute requires is an intent to assault, not an intent to assault a federal officer. **A contrary conclusion would give insufficient protection to the agent enforcing an unpopular law**, and none to the agent acting under cover."  *See Feola*, 420 U.S. at 684. (emphasis added).  "…we think it plain that Congress intended to protect both federal officers and federal functions, and that, indeed, furtherance of the one policy advances the other. The rejection of a strict scienter requirement is consistent with both purposes."  *Id*. at 679.

### Statement of Undisputed and Disputed Facts

On July 25, 2023, Torres-Carmona, a Cuban citizen, applied for admission to the United States at the Nogales, AZ DeConcini Port of Entry, by booking an appointment via CBP One. (DN 23-2).  Torres-Carmona did not possess valid entry documents.  (Id.).  Torres-Carmona was paroled into the United States but placed into removal proceedings.  (Id.).  Torres-Carmona was ordered to appear in front of an Immigration Judge at 601 West Broadway, Louisville, Kentucky on January 22, 2024.  (DN 23-3).  Torres-Carmona was ultimately given a court date of June 3, 2027.  On August 29, 2024, Torres-Carmona was arrested for theft and

on July 7, 2025, he was arrested for strangling his girlfriend. (DN 26; See also 24-M-006300 and 25-F-005448).

On July 30, 2025, U.S. Citizenship and Immigration Services (USCIS), Department of Homeland Security (DHS) emailed Enforcement and Removal Operations (ERO) Louisville identifying Torres-Carmona, among others, as being eligible to be taken into custody based on his criminal arrests. (DN 23-5). A notice was sent to Torres-Carmona requesting he come to the USCIS building, located at 411 S. 4th Street, Louisville, Kentucky for his immigration interview. (DN 23-6). The USCIS building is a secure building providing safety for both Torres-Carmona and the Deportation Officers (DO). Regardless, USCIS needed to conduct the interview before officially denying the I-485 Application. On August 26, 2025, Torres-Carmona appeared and interviewed with an immigration officer.

Following the interview, a Supervisory Immigration Services Officer (SISO) with USCIS escorted Torres-Carmona to a secure hallway where three DOs awaited him. DO A.B., fluent in Spanish, explained who the DOs were, and that Torres-Carmona was being arrested. (DN 25, Exhibit C). Torres-Carmona became combative, shoving two of the DOs and resisting and opposing arrest. (DN 25, Exhibit D). Torres-Carmona continued to resist and oppose arrest until two DOs were able to finally handcuff him and lead him out of the building. (Id.).

## Evidentiary Issues

### *Res Gestae*

On October 26, 2025, the United States provided Torres-Carmona notice that it intended to introduce at trial that (1) defendant Torres-Carmona was arrested for theft on August 29, 2024, in Jefferson County, Kentucky and (2) defendant Torres-Carmona was arrested for strangulation

on July 7, 2025, in Jefferson County, Kentucky. On December 2, 2025, in accordance with the Court's trial order, the United States filed a motion in limine requesting to introduce the above arrests as res gestae. (DN 25). Torres-Carmona also agrees that the arrests are res gestae and should be disclosed to complete the story. (DN 26). The United States and Torres-Carmona also agree that the contents of the citation cannot be introduced. The United States intends to inform the jury that Torres-Carmona was arrested for theft and strangulation on the respective dates. This can be accomplished through a stipulation, a USCIS witness, or the United States will call the arresting officers.

### *Rule 404(b) Evidence*

The United States also sought to introduce Torres-Carmona's arrests pursuant to FRE 404(b). Based on Torres-Carmon's proposed Entrapment Jury Instruction, predisposition of similar crimes like the assault that occurred the month before his arrest are highly relevant.

### **Motion to Exclude**

The United States moved the Court to prevent Torres-Carmona from collaterally attacking his ICE arrest, collaterally attacking the denial of his I-485 Application, attacking the current Administration's immigration policies on removal/deportation, arguing the Cuban Adjustment Act disallowed the Administration from denying his I-485 Application, and informing the jury that he faces persecution in his home country of Cuba. (DN 25). Essentially, most if not all, of Torres-Carmona's immigration documents and proceedings are totally irrelevant to the assault charges and only seek to confuse the jury. Anymore than a tangential discussion of the immigration backstory to inform the jury of why Torres-Carmona

was present at the USCIS building where the assault occurred is irrelevant and amounts to jury nullification.

Torres-Carmona responded, in part, that "Torres Carmona would assert that the described documentation is relevant to the United States proving the elements of the crime for which he is charged. For example, 'a case based upon Section 111…is not submitted to the jury without a charge that the 'assault' must be an intentional act willfully done without legal excuse.' Burke v. United States, 1968, 400 F.2d 866, 867. '[I]f the defendant asserts a lack of intention or willfulness based upon ignorance of the identity of the victim and ignorance of the victim's official privilege to interfere with the defendant's person or freedom of movement, the jury must be allowed to consider the defendant's evidence tending to show that he was ignorant of the official capacity of the victim.' Burke, supra." (DN 26, p. 8.)

Torres-Carmona relies on *United States v. Burke*, 400 F.2d 866 (5th Cir. 1968) and what appears to be *United States v. Young*, 464 F.2d 160 (5th Cir. 1972) for the above assertions. Unfortunately for Torres-Carmona, *Burke* and *Young* were both authored before the United States Supreme Court published *United States v. Feola*, 420 U.S. 671, 684 (1974), which expressed that the defendant's state of knowledge only "requires an intent to assault, not an intent to assault a federal officer." Whether USCIS properly denied his I-485 Application, how the Cuban Adjustment Act effected his I-485 Application, or the current Administration's policies on immigration are not material whatsoever to any element of the current charges. Any of these types of jury nullification defenses are improper and do not even survive the low bar of FRE 401. Evidence is relevant pursuant to FRE 401 if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) **the fact is of consequence in**

**determining the action**." (emphasis added). As previously stated, none of Torres-Carmona's immigration proceedings, immigration law, the current Administration's immigration policies, or his upbringing in Cuba are facts that would be considered "of consequence in determining" whether Torrres-Carmona knowingly assaulted, resisted or opposed two Deportation Officers. *See United States v. Mtola*, No. 14–3262, 598 Fed. Appx. 416 (6th Cir. January 30, 2015).

### Entrapment

Torres-Carmona proposed an Entrapment Jury Instruction. (DN 27). The United States is entitled to notice when an entrapment defense is going to be used so that the United States may offer evidence of predisposition in rebuttal. *US v. Carpentier*, 689 F.2d 21 (2nd Cir. 1982). "A valid entrapment defense requires proof of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity. To be entitled to an entrapment instruction, the defendant must come forward with evidence to support both elements of the defense." *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002). The burden then shifts to the United States. *See* Sixth Circuit Pattern Jury Instructions § 6.03. "The government has the burden of proving beyond a reasonable doubt that the defendant was already willing to commit the crime prior to first being approached by government agents or other persons acting for the government." *Id*. Our "central inquiry in entrapment cases is whether law enforcement officials implanted a criminal design in the mind of an otherwise law-abiding citizen or whether the government merely provided an opportunity to commit a crime to one who was already predisposed to do so." *United States v. Pennell*, 737 F.2d 521, 534 (6th Cir. 1984).

As for the government inducement element, the defendant must show "something more than 'merely afford[ing] an opportunity or facilities for commission of the crime.'" *United States v. Poulsen*, 655 F.3d 492, 502 (6th Cir. 2011). "An 'inducement' consists of an 'opportunity' plus something else—typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, noncriminal type of motive." *United States v. Fox*, 134 F.4th 348, 372 (6th Cir. 2024)(quoting *United States v. Hood*, 811 F. Appx 291, 298 (6th Cir. 2020)). "[T]actics typically found by courts to be excessive[ ] includ[e] threats, 'dogged insistence,' appeals to sympathy, or 'preying upon the love and loyalty of [a] special relationship.'" *Id*. Government agents do not entrap by merely presenting the opportunity to engage in criminal activity. *See United States v. Nelson*, 922 F.2d 311, 317 (6th Cir. 1990).

The second element, predisposition, is "by definition, 'the defendant's state of mind before his initial exposure to government agents'" *United States v. McLernon*, 746 F.2d 1098, 1112 (6th Cir. 1984)(quoting *United States v. Kaminski*, 703 F.2d 1004, 1008 (7th Cir. 1983)). "One is either predisposed to commit a crime before coming into contact with the government or one is not." *Id*. The Sixth Circuit "will uphold a district court's denial of an entrapment instruction when evidence 'clearly and unequivocally establishes that [the defendant] was predisposed.'" *Poulsen*, 655 F.3d at 502. The defendant must show evidence of both elements. *Id*. "In determining whether a defendant was predisposed to commit the offense, the following factors are relevant: [t]he character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by the Government; whether the defendant was engaged in criminal activity for profit; whether the defendant

evidenced reluctance to commit the offense, overcome only by repeated Government inducements or persuasion; and the nature of the inducement or persuasion supplied by the Government." *United States v. Al-Cholan*, 610 F.34 945, 950 (6th Cir. 2010). Past conduct does not have to be precisely the same conduct charged. *Id*. at 951. "As long as the defendant shows a predisposition to commit an offense, governmental participation in the commission of an offense by itself cannot be the basis of an entrapment defense." *United States v. Tucker*, 28 F.3d 1420 (6th Cir. 1994); *United States v. Leja*, 563 F.2d 244 (6th Cir. 1977). The *Fox* Court recited facts showing the defendant was predisposed to commit the crime in question,

> The record demonstrates that Croft was predisposed to join both conspiracies. Regarding his character and reputation, as Croft himself acknowledges, he has "embraced an antigovernment philosophy" that uses "III % symbols," 5 which references a militia group that has adopted a similar stance. (ECF 28, Croft Appellant Br. 7). So committed was he to its precepts, that he also had the III% symbol tattooed onto this hand. In his briefing, Croft admits that he also wore a Hawaiian "boogaloo" 6 shirt—boogaloo is a movement centered around the idea of civil war between citizens and the federal government—to demonstrate his anti-government association. And as early as 2019, Croft began discussing the idea of a "flash gathering in Ohio" with "two weeks max notice," which would be "[t]oo quick for the feds to cut red tape and infest." (R. 838, PageID 14492). The purported goal was to begin discussions of acts of terrorism. In a recorded conversation, Croft discussed the fact that he had begun plotting to kidnap a state governor since approximately December 2019, stating that they should "take the militia and go grab that f[ ]cking governor right where he lives at." (Gov. Ex. 112*). Moreover, in a private Facebook message, Croft posted that executing state governors would ultimately lead to a second American Revolution. In particular, Croft explained that if only one governor were to be hung, it would cause a "domino[ ]" effect. (R. 844, PageID 15945). In May 2020, Croft also posted a picture of a noose, followed by writing: "Which Governor is going to end up dragged off, and hung for treason first?" (Gov. Ex. 360). And leading up to the meeting in Dublin, Ohio, Croft told Fox that the meeting was to discuss attack plans. All these incidents occurred before Croft ever met any government informants. This factor weighs in favor of Croft's predisposition.

*See Fox*, 134 F.4th   375.

10

### Known or Reasonably Anticipated Potential Trial Problems

None currently.

### Proposed Jury Instructions

Filed separately.

### Proposed Voir Dire

In addition to the Court's questionnaire, the United States submits the following questions for inclusion in the Court's voir dire of the jury panel:

1. Do you agree with federal law that permits the deportation of certain noncitizens.

2. Do any of you have strong opinions about immigration laws or immigration enforcement agencies, including ICE, DHS, or USCIS?

3. Would your personal views on immigration policy—whether for stronger enforcement or more lenient policies—affect your ability to be fair in a case involving ICE officers?

4. Does anyone believe that ICE officers are more likely to be truthful or less likely to be truthful simply because of their job title?

5. Have you ever had a negative or positive encounter with an ICE, immigration, or border official that could influence your view of this case?

6. In this case, evidence may show that the government used a ruse—for example, a letter or appointment used to facilitate an arrest. Does anyone feel that the government should never use such tactics and that their use alone would prevent you from being fair?

7. Do you understand that the government is permitted under the law to use undercover or deceptive tactics in certain situations, and that the question for you is not whether you personally approve of the tactic, but whether the charged offense was proven beyond a reasonable doubt?

8. Would evidence that the government used a pretext, deception, or ruse to make an arrest cause you to automatically favor the defendant or the government?

9. Have any of you or your close family members been involved in a physical confrontation or arrest involving law enforcement?

10. Would that experience affect your ability to be impartial?

11. Do you believe that people being arrested are required to comply, even if they believe the arrest is unfair or unjust?

12. Do you believe resisting or pulling away from officers is sometimes understandable and should not be considered a crime?

13. Would those beliefs interfere with your ability to apply the law as instructed by the judge?

14. Do any of you have martial arts, self-defense, or security training that might affect how you evaluate physical interactions?

15. The defendant's immigration status—whatever it may be—is not on trial. Does anyone feel they might have difficulty separating immigration issues from the question of whether an assault occurred?

Exhibit List

Filed separately.

Proposed Witness List

Filed with the Court for the Court's *in camera* review.

Respectfully submitted,

KYLE G. BUMGARNER
United States Attorney

*/s/ Joseph Ansari*
Joseph R. Ansari
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
(502) 582-5911 (tel)

CERTIFICATE OF SERVICE

     I hereby certify that on December 17, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

                                            */s/ Joseph Ansari*
                                            Joseph R. Ansari
                                            Assistant United States Attorney